RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0004P (6th Cir.)
File Name: 04a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CORA JEAN TERRY,
*Plaintiff-Appellee,*

METROPOLITAN LIFE
INSURANCE COMPANY,
*Defendant-Appellee,
Third Party Plaintiff,*

v.

DAVID M. LAGROIS,
CHRISTOPHER J. GAMBLE, and
DANIEL R. GAMBLE,
*Third Party
Defendants-Appellants.*

No. 02-1969

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71780—Lawrence P. Zatkoff, Chief District Judge.

Argued: December 3, 2003

Decided and Filed: January 7, 2004

Before: GUY and GILMAN, Circuit Judges; REEVES,*
District Judge.

———————————

## COUNSEL

**ARGUED:** Randy J. Wallace, OLSMAN, MUELLER & JAMES, Berkley, Michigan, for Appellants. Paul M. Stoychoff, RUSSELL & STOYCHOFF, Troy, Michigan, for Appellees. **ON BRIEF:** Jules B. Olsman, OLSMAN, MUELLER & JAMES, Berkley, Michigan, for Appellants. Paul M. Stoychoff, RUSSELL & STOYCHOFF, Troy, Michigan, for Appellees.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge. This case arises out of a dispute over the proceeds of a group life insurance policy. Earline Lynn Gamble, a United States Postal Service employee, was insured under the Federal Employees Group Life Insurance Act (FEGLIA). She presumably intended to designate her sister, Cora Terry, as the sole beneficiary of the policy, but Gamble signed the designation-of-beneficiary form with only her first name, failed to date the form, and neglected to check a box acknowledging that she had signed in the presence of the two witnesses. When Gamble died, Terry and Gamble's three sons filed competing claims for the life insurance proceeds. The sons argued that Gamble's designation of Terry as the sole beneficiary was defective, resulting in the sons becoming the proper beneficiaries under FEGLIA's default provisions. On cross-motions for summary judgment, the district court ruled in favor of Terry. For the

———————————

*The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The United States Postal Service made available to Gamble a group life insurance policy pursuant to FEGLIA, 5 U.S.C. §§ 8701-8716. Gamble applied for the policy, issued by Metropolitan Life Insurance Company (MetLife), in May of 1994. On a separate form titled "Designation of Beneficiary," Gamble named her sister, Cora Terry, as the policy's sole beneficiary. But in making this election, Gamble signed only her first name "Earline" in the space provided on the form for her signature. She also neglected to date the form and to check a box confirming that she had signed the form in the presence of the two witnesses. Two unrelated individuals, however, did in fact sign as witnesses in the space provided. The Postal Service acknowledged receipt of the form in June of 1994.

When Gamble died in March of 2001, a controversy arose between her three sons and her sister over who was entitled to the $197,000 in proceeds of the life insurance policy. Each side filed claims for death benefits with the Office of Federal Employees' Group Life Insurance. Gamble's sons contended that the designation of beneficiary was defective because Gamble had signed only her first name and had not dated the form. They did not raise the issue of their mother's failure to check the "witness" box.

The statute provides that if the insured does not properly designate a beneficiary, then FEGLIA benefits will be distributed according to an order of precedence specified in the statute. Gamble's sons are the preferred individuals in the event that Gamble failed to properly designate another beneficiary.

In May of 2001, Terry sued MetLife for the proceeds of Gamble's life insurance policy. Because the rival claims

raised the possibility of multiple liability for MetLife, the company offered to interplead the insurance proceeds and brought a cross-claim against Gamble's three sons. MetLife argued that because Gamble had signed the designation-of-beneficiary form with only her first name, rather than her full name, it was "unable to determine the proper beneficiary to receive the life insurance benefits." The company thus asked the court to take control of the $197,000 in life insurance proceeds and to release MetLife from the conflicting claims of Gamble's three sons and her sister Terry. None of the rival claimants objected to MetLife's interpleader request.

Terry moved for summary judgment against MetLife in December of 2001, arguing that she was entitled to the life insurance proceeds as a matter of law. Gamble's sons responded by filing their own motion for summary judgment, contending that they were entitled to the life insurance proceeds because Gamble's signature was allegedly inadequate and because she had failed to date the designation form. They again made no mention of Gamble's failure to check the "witness" box.

The district court granted Terry's motion for summary judgment in July of 2002, reasoning that

> [a]lthough Ms. Gamble failed to sign her full name, two witnesses were present to watch her authenticate the document. Under § 8705, individuals, other than the beneficiary, are required to witness the insured party's signature on the Designation of Beneficiary form. This requirement ensures that the insured party actually and willfully signed the document. The Court finds that Ms. Gamble would not have summoned these witnesses nor would the witnesses have freely signed the form had Ms. Gamble not intended to authenticate the Designation of Beneficiary form.

No mention was made by the district court of the sons' argument regarding the failure of Gamble to date the form.

This appeal followed.

## II. ANALYSIS

### A. Standard of review

We review a district court's grant of summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. FEGLIA

"Congress enacted FEGLIA in 1954 to provide low-cost group life insurance to Federal Employees." *Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 576 (7th Cir. 1992) (quotation marks omitted). The provision of the Act relevant to the present case is 5 U.S.C. § 8705(a), which governs the designation of a beneficiary. If the insured does not designate a beneficiary, the proceeds of the life insurance policy are to be paid according to the order of precedence mandated by the statute. Section 8705(a) provides in pertinent part as follows:

Except as provided in subsection (e), the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employee or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

Congress amended FEGLIA in 1966 to tighten up the requirements for designating a beneficiary. Prior to the amendment, the statute simply required that the insured designate a beneficiary in a "writing received in the employing office prior to death," S. Rep. No. 89-1064, *reprinted in* 1966 U.S.C.C.A.N. 2070, 2071, rather than a "*signed* and *witnessed* writing received before death." 5 U.S.C. § 8705(a). (Emphasis added.) FEGLIA was amended as a reaction to cases that looked to a decedent's "manifest intent," rather than to strict compliance with civil service regulations, in determining the proper beneficiary. *See* S. Rep. No. 89-1064 at 2071.

One such case was the Ninth Circuit's decision in *Sears v. Austin*, 292 F.2d 690 (9th Cir. 1961). Cecil Sears worked for the Internal Revenue Service (IRS) and, as a federal employee, received life insurance coverage through FEGLIA. *Id.* at 690. At the time of his death, Sears had not complied with the civil service regulations in designating a beneficiary of his life insurance policy. The policy explained that Sears had the option of designating a beneficiary by securing "the proper form . . . from the U.S. Civil Service Commission," *id.* at 691, but, in the event that Sears did not designate a beneficiary, the life insurance proceeds would be paid according to a statutory order of preference. Although Sears did not designate a beneficiary in writing using the U.S. Civil Service Commission's form, he did designate a beneficiary in a handwritten will. The will, which was apparently neither witnessed nor filed with the IRS prior to Sears's death, provided in pertinent part as follows:

> In all due respect for my son and adopted daughter, Robert Cecil and LaVonne[,] I must remember the time and care given to me by Karen when I was very ill and had no one to help me except her. For this I am requesting that all my personal belongings in my apartment . . . [including] my insurance policy with the Federal Government . . . be given to Mrs. Karen Austin.

*Id.*

After Sears died, his two children and Austin filed competing claims to Sears's life insurance proceeds. The Ninth Circuit held that Austin was entitled to the proceeds, reasoning that the fact that Sears "did not make his original designation in the exact manner set forth in the policy[] should not prevent his definite intention, manifested by the affirmative act of drawing up a will, from being given effect." *Id.* at 695. When Congress amended FEGLIA in 1966, it discussed the Ninth Circuit's holding in *Sears* as a primary motivating factor for the change:

> The equities in *Sears* may have prompted the court of appeals to disregard the civil service regulation and the general intent of the statute in order to comply with the insured's wishes, but the precedent established in that case could, if generally followed, result in administrative difficulties for the Civil Service Commission and the insurance companies and, more important, seriously delay paying insurance benefits to survivors of Federal employees.
>
> To clarify Congress' intent, H.R. 432 rewrites section 4 to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary unless the designation has been properly received in the employing office or by the Civil Service Commission.

S. Rep. 89-1064, *reprinted in* 1966 U.S.C.C.A.N. 2070, 2071. This court has recognized that with the 1966 amendments to FEGLIA, "Congress, on administrative efficiency grounds, abolished the manifest intent test" that prevailed in *Sears*. *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

## C. Gamble's designation of a beneficiary

On appeal, Gamble's sons argue that the following three errors in their mother's designation-of-beneficiary form render her designation invalid: (1) the signature of "Earline" rather than her full name, (2) her failure to date the designation form, and (3) her failure to check the box acknowledging that she signed the form in the presence of the two witnesses. The sons therefore claim entitlement to the life insurance proceeds because, in the absence of a designated beneficiary, they are the preferred beneficiaries according to the order of precedence set forth in 5 U.S.C. § 8705(a).

Because the sons raise the issue of Gamble's failure to check the "witness" box for the first time on appeal, we decline to consider this point. *See United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) ("This court has repeatedly held that it will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (quotation marks omitted). Furthermore, even if the sons had not waived this argument, we would have concluded that it lacks merit for the same reason that their argument concerning Gamble's failure to date the form lacks merit, i.e., the statute does not impose either requirement as a condition of making a valid designation. FEGLIA simply mandates a "signed and witnessed writing received before death in the employing office." 5 U.S.C. § 8705(a). Under the present circumstances, where the sons have not challenged what appears on the form to be their mother's properly witnessed signature, we have no basis to believe that our failure to consider the effect of the unchecked box "will result in a plain miscarriage of justice." *Id.* at 424.

This leaves us with the sons' remaining contention that Gamble's incomplete signature invalidates her designation of beneficiary. To support their position, the sons cite *Hightower v. Kirksey*, 157 F.3d 528 (7th Cir. 1998), *Thomas v. Metropolitan Life Insurance Co.*, No. 99-1908, 1997 WL 159426 (D.C. Cir. Feb. 24, 1997) (unpublished decision), and *Ward v. Stratton*, 988 F.2d 65 (8th Cir. 1993), to demonstrate that other circuits have demanded strict compliance with FEGLIA's requirements for designating a beneficiary. All three cases, however, are easily distinguishable on their facts. In *Hightower* and *Thomas*, the insured employees *totally failed to sign* the designation-of-beneficiary form. The Eighth Circuit in *Ward*, on the other hand, held that neither of two attempts to change the designated beneficiary had any force or effect because the first form attempting to do so was not witnessed and the second was received after the insured had died.

Unlike in *Hightower* and *Thomas*, Gamble did not fail to sign her designation-of-beneficiary form, and, unlike in *Ward*, her form was properly witnessed and timely filed. Her signature is admittedly unusual, but, as the district court noted, FEGLIA "is silent regarding the sufficiency of an insured's signature on a Designation of Beneficiary form." Nothing in the statute requires an insured to sign her full name; it simply requires a signed and witnessed writing. As the district court recognized, a wide variety of "signatures" in other contexts are considered to be legally valid:

> Plaintiff also cites the Court to: MICH. COMP. LAWS § 440.1201(39) (1979) (defining "signed" as "any symbol executed or adopted by a party with present intention to authenticate a writing, including a carbon copy of his or her signature.") RESTATEMENT (SECOND) OF CONTRACTS § 134 ("The signature to a memorandum may be any signature made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signor.") and 2 Corbin, *Contracts* §§ 520-526 (1952) ("A signature may consist of part or all of the signor's name, even though misspelled or abbreviated to initials only.").

The sons argue, however, that the law governing the sufficiency of signatures for contract purposes is inapposite in the context of FEGLIA. But they fail to explain their contention and do not cite any supporting authority. They further point out that "[i]t would stand to reason that any rule articulated by a court to govern the provisions of FEGLIA should conform to, and ultimately serve, the end purpose for which Congress drafted and enacted FEGLIA." We fully agree. But unlike Gamble's sons, we see no reason why the understanding of what constitutes a signature under the UCC and general contract law does not conform to or serve the end purposes for which Congress drafted FEGLIA.

As reflected in the Senate Report when FEGLIA was amended in 1966, *see* S. Rep. No. 89-1064, *reprinted in* 1966

U.S.C.C.A.N. 2070, 2071, the concern of Congress was to avoid the "administrative difficulties" inherent in allowing unspecified "extraneous document[s]" designating a beneficiary to be considered. There was no concern expressed about the completeness of the insured's signature in the space provided on the approved form.

Surely no court would declare any signature less than "Earline Lynn Gamble" to be invalid. If "Earline L. Gamble" would have been sufficient, or even "Earline Gamble," then why not simply "Earline"? Because Gamble's abbreviated signature appears in the proper space on the designation-of-beneficiary form duly filed with the Postal Service, and no one questions either the authenticity of her signature or the fact that it was properly witnessed, we see no reason not to give the designation its full effect. In sum, we find no justification for distinguishing between what is a sufficient signature under both the UCC and general contract law from what is sufficient under FEGLIA.

**D. The sons' standing to bring this appeal**

Terry argues, as an alternate basis to affirm the judgment of the district court, that the sons lack standing to bring this appeal for a variety of procedural reasons. A previous panel of this court, however, denied Terry's motion to dismiss the appeal on this basis. *Terry v. LaGrois*, No. 02-1969 (6th Cir. Nov. 5, 2002) (unpublished order). Because we have no reason to disturb that ruling, and because we have concluded that Terry should prevail on the merits, we have no need to address her alternative basis for recovery.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.