**Julie Ann SANFORD, Plaintiff–Appellant,**

v.

**John J. SHEA, Jr., and John Shea d/b/a The Shea Clinic, Inc., Defendants–Appellees.**

No. 03–5540.

United States Court of Appeals, Sixth Circuit.

July 8, 2004.

Duncan E. Ragsdale, Jr., Memphis, TN, for Plaintiff–Appellant.

Charles C. Harrell, Elizabeth Einstman Chance, Butler, Snow, O'Mara, Stevens & Cannada, Memphis, TN, for Defendants–Appellees.

Before SILER, MOORE, and BALDOCK,* Circuit Judges.

## OPINION

BALDOCK, Circuit Judge.

Plaintiff Julie Ann Sanford brought this diversity action against Defendants Dr. John Shea and the John Shea Clinic (collectively "Defendant") alleging medical malpractice. Defendant filed a motion for summary judgment, arguing Plaintiff's claim was time-barred under Tennessee's one-year statute of limitations for malpractice actions. The district court granted Defendant's motion. According to Plaintiff, the issue on appeal is whether "Defendant is entitled to a judgment based on the running of the statute of limitations, T.C.A. § 29–26–116(3) regarding fraudulent concealment." (Aplt.'s Br. at 2). "We

review the district court's decision to grant summary judgment *de novo* and apply the same standard the district court applied."[1] *Thacker v. City of Columbus,* 328 F.3d 244, 251–52 (6th Cir.2003). Applying this standard, we affirm for substantially the same reasons as the district court.

## I.

The following facts are set forth in the light most favorable to Plaintiff. Plaintiff Sanford visited Defendant Dr. Shea on July 7, 1998, complaining of nausea, "light-headedness," and "stomach problems." Defendant performed a "Hallpike" test on Sanford. The Hallpike test is a procedure "for eliciting paroxysmal vertigo and nystagmus in which the patient is brought from the sitting to the supine position with the head hanging over the examining table and turned to the right or left[.]" Stedman's Med. Dictionary 1060 (27th ed.2000).[2] After performing the Hallpike test, Defendant told Plaintiff that she had positional vertigo. Defendant recommended Plaintiff undergo a perfusion treatment, which consisted of injecting medication (streptomycin) into Plaintiff's

---

* The Honorable Bobby R. Baldock, United States Court of Appeals for the Tenth Circuit, sitting by designation.

1. The district court correctly stated "[u]nder Federal Rule of Civil Procedure 56(c), summary judgment is proper if ... there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Plaintiff argues on appeal the district court applied the incorrect standard of review because it did not "take the strongest legitimate view of the evidence" in her favor and failed to "discard all countervailing evidence." (Aplt's Br. at 27, 32). Plaintiff, however, misconstrues the plain language of Rule 56, which requires the district court to enter summary judgment "if *the* pleadings, depositions, answers to interrogatories, and admissions *on file,* together with *the* affidavits, if any, show that the there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c) (emphasis added). Moreover, summary judgment would *never* be proper under Plaintiff's proposed reading of Rule 56 because the district court would always disregard all the movant's evidence. Such a reading renders the entire rule superfluous and we, of course, decline to adopt such a reading.

2. Plaintiff states in her brief, without citation to or support in the record, that "[i]f involuntary eye movement, 'nystagmus,' is observed, the test is positive for positional vertigo." (Aplt's Br. at 7). Defendant testified, however, that "sometimes you can make the diagnosis of positional vertigo without the presence of nystagmus, [and] just the presence of the dizziness[.]" (Joint App. 206). Defendant did explain that "[n]ystagmus is *one of the signs* of positional vertigo." (*Id.* (emphasis added)).

ear over a three day period. Plaintiff consented to the procedure. Defendant performed the procedure from July 7–9, 1998.

Plaintiff's condition worsened notwithstanding Defendant's treatment. As a result, Plaintiff visited Dr. Max Wertz at the Mayo Clinic in October 1998. Dr. Wertz informed Plaintiff that she did *not* have positional vertigo, but instead suffered from vestibular neuronitis. Dr. Wertz also informed Plaintiff that Defendant's treatment had "caused part of [her] problem."[3]

On January 16, 2001, Plaintiff visited Dr. Terry Fife who informed her that Defendant's treatment of her condition was not "standard." Dr. Fife also indicated the medication Defendant injected into her ear had likely destroyed the functioning of her inner ear. On January 10, 2002, Plaintiff filed a medical malpractice action against Defendant.[4] The action was filed 3 years and 185 days after Defendant treated Plaintiff.

## II.

The Tennessee Malpractice Act governs malpractice actions filed in Tennessee.[5] Tenn.Code Ann. §§ 29–26–115 to 29–26–119. The Act imposes a one-year statute of limitations and a three-year statute of repose on malpractice actions. *Id.* § 29–26–116(a)(1)–(3). Specifically, § 29–26–116(a) provides:

(1) The statute of limitations in malpractice actions shall be one year. . . .

(2) In the event the alleged injury is not discovered within such one year period, the period of limitation shall be one year from the date of such discovery.

(3) In no event shall any such action be brought more than three years after the date on which the negligent act or omission occurred except where there is

---

**3.** As discussed below, Plaintiff's deposition testimony on the information Dr. Wertz relayed to her is dispositive of the statute of limitations inquiry before the court. We therefore quote Plaintiff in full:

Q. What Dr. Shea had done for you had not made you any better?
A. [by Plaintiff] It had made me worse.
Q. And you knew that when you went to go see Dr. Wertz in October of 1998?
A. Yes.
Q. According to you, Dr. Wertz told you in 1998 that you had vestibular neuronitis; is that correct?
A. Correct.
Q. And you did not have benign positional vertigo, correct?
A. Correct.
Q. And he told you that Dr. Shea's treatment probably caused part of your problems, right?
A. Correct.
(Supp.App. at 27–28).

**4.** Plaintiff attempts to raise an intentional misrepresentation claim for the first time on appeal. Specifically, Plaintiff argues "[t]he Complaint filed in this cause does not allege simple negligence; it alleges all the elements of intentional misrepresentation." (Aplt's Br. at 30). We reject Plaintiff's *ad hoc* attempt to amend her complaint for two reasons. First, the magistrate judge and district court both found Plaintiff's complaint alleged only a medical malpractice claim. (Joint App. at 165, 173). Plaintiff never argued in the district court that her complaint alleged an intentional misrepresentation claim; therefore, we will not consider the argument for the first time on appeal. *Terry v. LaGrois*, 354 F.3d 527, 532 (6th Cir.2004). Second, Plaintiff concedes the statute of limitations for *malpractice actions*, Tenn.Code Ann. § 29–26–116(3), is "controlling." (Aplt's Br. at 2, 29). Plaintiff never cites the statute of limitations for personal injury claims, *see* Tenn.Code Ann. § 28–3–104, nor does she argue the district court should have applied § 28–3–104.

**5.** A federal district court sitting in diversity must apply the substantive law of the forum state. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir.2003). The district court properly applied Tenn.Code Ann. § 29–26–116 because the statute of limitation is substantive law. *See Advey v. Celotex Corp.*, 962 F.2d 1177, 1181 (6th Cir.1992).

fraudulent concealment on the part of defendant, in which case the action shall be commenced within one year after the discovery that the cause of action exists.

With respect to the one-year statute of limitations, the Tennessee Supreme Court has held "the statute of limitations commences to run when the patient discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced the patient's injuries; and (2) the identity of the defendant who breached the duty." *Shadrick v. Coker,* 963 S.W.2d 726, 733 (Tenn.1998). Thus, the statute of limitations begins to run when the patient knows, or should have known, the defendant's wrongful or tortious conduct resulted in an injury. *Id.* The patient need only have knowledge of facts sufficient to put her on notice that an injury has been sustained. *Id.* at 734. The statute does not require the patient actually know of the specific type of legal claim she has or that the injury constituted a breach of the appropriate legal standard. *Id.* at 733.

With respect to the three-year statute of repose, the Tennessee Supreme Court has held the statute begins to run on the date of the alleged malpractice regardless of when the cause of action accrued. *Id.* at 735. "Hence, the three-year statute of repose establishes a ceiling on the time in which a malpractice suit may be brought." *Id.* The statute of repose, however, contains a "fraudulent concealment" exception. Tenn.Code Ann. § 29–26–116(a)(3). Under this exception, if a defendant fraudulently conceals her tortious acts, the patient must bring the malpractice action within one year of discovering her cause of action exists. *Shadrick,* 963 S.W.2d at 735.

In this case, Plaintiff testified she knew Defendant's treatment procedures made her condition worse in October 1998. Dr. Wertz informed Plaintiff that Defendant's treatment had caused part of her medical problems. Dr. Wertz also informed Plaintiff she did not have positional vertigo, but instead suffered from vestibular neuronitis. Therefore, after her visit with Dr. Wertz in October 1998, Plaintiff knew or should have known Defendant's conduct partially caused her injury. Consequently, Plaintiff had until October 1999 to file her malpractice claim. Plaintiff did not file her claim, however, until January 10, 2002. Plaintiff thus filed her malpractice action after § 29–26–116(a)'s statute of limitation and repose had run.[6] Similarly, the fraudulent concealment exception to § 29–26–116(a)'s three-year statute of repose does not apply. *Assuming* Defendant concealed his tortious acts, Plaintiff had one year from the date she discovered her malpractice action to sue Defendant. Plaintiff discovered Defendant partially caused her injury in October 1998, but did not file suit until over three years later. Thus, the fraudulent concealment exception is of no avail to Plaintiff.

For the foregoing reasons, the district court's March 27, 2003 order granting Defendant's motion for summary judgment is

AFFIRMED.

---

**6.** Plaintiff complains the district court erroneously focused on Plaintiff's deposition testimony "to the exclusion of all other evidence." (Aplt's Br. at 24, 32). Plaintiff's deposition testimony, however, was the most relevant evidence to the statute of limitations inquiry before the court. The district court cannot be faulted for failing to discuss irrelevant evidence.