BARNES, J.,
for the Court.
¶ 1. Clemie L. Lea appeals the judgment of the Chancery Court of Harrison County in favor of Rachel Almore. The chancery court admitted to probate the typed will of Bernard Johnson; appointed Rachel' Al-more administratrix of the Estate of Bernard Johnson; and dissolved a temporary restraining order, thereby paying Rachel Almore life insurance proceeds held by the Clerk of the Harrison County Chancery Court. On appeal, Lea argues that the beneficiary designation form for Johnson’s Federal Employees’ Group Life Insurance policy is invalid because it was improperly witnessed. Specifically, Lea argues that a witness to Johnson’s signature, required pursuant to federal regulation, should have been physically present when Johnson signed this form naming Almore as beneficiary. We find that the trial court did not err in pronouncing Johnson’s beneficiary designation form valid, and thus releasing his life insurance proceeds to named beneficiary Almore. Accordingly, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On July 27, 2003, Bernard Johnson died in Gulfport, Mississippi at the age of fifty-two from lung cancer which had metastasized to his liver. At his death, Johnson’s assets included a house, its contents, and a 1996 Dodge Intrepid. He also carried a $240,000 Federal Employees’ Group Life Insurance (FEGLI) policy. He had designated his girlfriend, Rachel Almore, as beneficiary five days before his death.
¶ 3. This matter commenced in the chancery court on August 25, 2003, when Cle-mie L. Lea, Johnson’s mother, filed a petition to determine heirship and a petition *894 for letters of administration claiming her son died intestate. The court appointed her administratrix of Johnson’s estate. On September 25, 2003, Almore filed her own petition for letters of administration and produced a typewritten will which left Johnson’s house, its contents, and his car to her. On September 30, 2003, Lea filed a complaint to set aside the will, and this litigation ensued.
¶ 4. Johnson and Almore lived together as “man and wife” for fifteen consecutive years, first in Greenwood, Mississippi in 1988 and then on the Mississippi Gulf Coast. At the time of his death, Johnson’s debts totaled $132,331.47, including two mortgages totaling $94,710 for his home in Gulfport, which he had purchased in 1994 and where he had lived with Almore. At his death, Bernard Johnson was not married, nor did he have any children. Both Johnson and Almore were married to others when they started dating, but Johnson obtained a divorce around 1988. Almore had been estranged from her former husband since 1982. Although Almore had filed for divorce, it was not finalized until after Johnson’s death. In 1991 Johnson and Almore moved to the Gulf Coast so that Johnson could take a job at the Veterans Administration Hospitals. Prior to his death, Johnson had been a vocation rehabilitation specialist, and Almore worked at the Armed Forces Home as a certified nursing assistant. Johnson held many federal employee benefits with his job, including a group life insurance policy, as did Almore.
¶ 5. On May 19, 2003, Johnson became ill and was hospitalized in Gulfport, Mississippi. On May 20, 2003 he was diagnosed with lung cancer and began treatment at hospitals in Jackson and the Gulf Coast. On July 22, 2003, as his health deteriorated, Johnson called his co-worker at the Veterans Administration Hospital, Marsha Garrett, to help him get his affairs in order, which she did. Four days later, on July 27, 2003, Johnson passed away.
¶ 6. During the contest over Johnson’s will, the issue of the life insurance proceeds came up peripherally, first in Rachel Almore’s deposition, and later at trial.[1] Lea alleged after Louise Roberts’s testimony at the April 13, 2004 hearing that the life insurance beneficiary form may have been improperly witnessed. Lea contended the designation was invalid, and she, not Almore, should receive the benefits under the order of precedence stated in 5 U.S.C. § 8705(a) (2006).[2]
¶ 7. According to testimony, the designation of beneficiary form was signed in the following manner. Five days before Johnson’s death, on July 22, 2003, Garrett procured several designation forms relating to his federal benefits, per Johnson’s request, and took them to his home. Garrett witnessed Johnson’s signature on several documents, including the FEGLI designation form, according to his instruction. It is in this form that Johnson named Almore as beneficiary of his life insurance policy. Since two witnesses were needed for his life insurance designation form, Johnson instructed Garrett to take the form, along with other papers, to Louise Roberts, a coworker at the Veterans Administration Hospital who is a notary. Johnson then *895 telephoned Roberts to ask her to notarize his will, as well as witness his signature on the various federal designation forms. Garrett delivered the will and paperwork to Roberts at the VA Hospital. Roberts then signed as the second witness on the beneficiary form.[3] Garrett confirmed to Roberts that she had seen Johnson sign the will and designation forms the prior day. Roberts stated she recognized Johnson’s signature on the VA papers. Roberts also testified that in the past she had conversations with Johnson regarding his intent to financially support Almore in the event of his death.
¶ 8. Upon Johnson’s death, Almore was paid the $240,000 life insurance proceeds. On April 15, 2004, Lea filed a motion for a temporary restraining order regarding the life insurance proceeds.[4] The chancellor granted the temporary restraining order. The balance of the life insurance proceeds was deposited into the registry of the Chancery Court of Harrison County by agreed order on May 4, 2003.
¶ 9. On February 4, 2004, the chancery court dissolved the temporary restraining order, releasing the funds to Almore. Aggrieved, Johnson’s mother Lea filed this appeal. We hold that the chancery court did not err in interpreting 5 U.S.C. § 8705(a) (2006) or 5 C.F.R. § 870.802(b) (2006). Thus, we find Almore is the proper beneficiary of Johnson’s life insurance policy.
STANDARD OF REVIEW
¶ 10. A de novo standard is used to analyze the chancery court’s interpretation and application of law. Nichols v. Funderburk, 883 So.2d 554, 556 (¶7) (Miss.2004).
ISSUES AND ANALYSIS
¶ 11. Although not raised by the parties, this Court’s first responsibility is to assure itself that we have jurisdiction over these proceedings. M.W.F. v. D.D.F., 926 So.2d 897, 899 (¶ 4) (Miss.2006). Though the issue of the life insurance policy was *896 not pled initially, the group life insurance policy became part of Lea’s claims by ore terms motion of her attorney. During the hearing on April 13, 2004, the chancellor stated that this issue has been “raised and approved by the Court.” In his final judgment, which resolved all outstanding claims of the parties, the chancellor approved the validity of Almore as designated beneficiary of Johnson’s life insurance policy. Thus, this issue received final adjudication from the chancery court required under M.R.C.P. 54(b). It follows that jurisdiction is proper in this Court.
¶ 12. Lea raises three issues on appeal: first, whether Congress intended courts to strictly construe 5 U.S.C. § 8705(a); second, whether Johnson’s designation form was valid when the second person signing as a witness did not actually view the insured signing the form; and third, whether Louise Roberts’s witness signature establishes her as a “presence witness” under 5 U.S.C. § 8705(a) and 5 C.F.R. § 870.802 (2006). Central to each of Lea’s arguments is whether the life insurance beneficiary form was properly witnessed according to 5 C.F.R. § 870.802(b), when the second witness was not physically present when Johnson executed the beneficiary form. Thus, we will combine Lea’s issues for discussion.
¶ 13. Federal statute specifically dictates the order of precedence whereby a beneficiary who presents a valid claim shall be paid FEGLI life insurance benefits upon the federal employee’s death. 5 U.S.C. § 8705(a). The order of precedence states, upon the establishment of a valid claim, if there is no designated beneficiary, and the decedent has no widow or children, the decedent’s surviving parents receive the life insurance proceeds.[5] 5 U.S.C. § 8705(a). If the employee wishes to designate a beneficiary different from the order of precedent, he must properly fill out and file a designation of beneficiary form. 5 C.F.R. § 870.802(a). To be valid, “[a] designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by two people.” 5 C.F.R. § 870.802(b).
¶ 14. Lea argues that the chancery court misinterpreted case law regarding the above statute and regulation. There is no dispute that the few cases pertaining to this issue clearly establish that Congress intended courts to strictly construe the beneficiary designation statute regarding FEGLI life insurance. Stribling v. United States, 419 F.2d 1350, 1354 (8th Cir.1969); Metro. Life Ins. v. Smith, 727 F.Supp. 234, 237-38 (W.D.N.C.1989); Adams v. Macy, 314 F.Supp. 399, 401 (D.Md.1970); Pekonen v. Edgington, 298 F.Supp. 158, 159 (E.D.Cal.1969). However, Clemie Lea contends that “strictly construed” means both witnesses must be physically present when the insured signs the FEGLI designation form in order for it to be valid. This Court disagrees.
¶ 15. Factually, neither party disputes that one witness, Louise Roberts, was absent when Johnson signed his FEGLI designation form. Lea claims that the chancery court misinterpreted two cases which dealt with the relevant statute and regulation, Metro. Life Ins. v. Smith, 727 F.Supp. 234 (W.D.N.C.1989) and O’Neal v. Gonzalez, 653 F.Supp. 719 (S.D.Fla.1987). Lea states these cases hold that the witnesses must be physically present while the insured executes the FEGLI form in order for it to be valid. However, contrary to Lea’s interpretation, these two *897 cases explicitly hold either a presence requirement or an oral acknowledgment by the witnesses of the insured’s signature is sufficient under 5 C.F.R. § 870.802(b). Smith, 727 F.Supp. at 237; O’Neal, 653 F.Supp. at 722.
¶ 16. In O’Neal, the insured did not sign his FEGLI designation form at the same time and in the physical presence of two witnesses. O’Neal, 653 F.Supp. at 721. There, it was unclear how the insured received the signature of the two witnesses. Id. at 721 n. 3. Nevertheless, both witnesses testified that the insured either signed the form in their presence or that they recognized the insured’s signature. Id. Thus, the court found the designation form valid. Id. at 723.
¶ 17. Similarly, in Smith, that court found the O’Neal case persuasive and specifically stated “the explicit language of 5 U.S.C. Section 8705(a) and of the regulations does not require the insured to sign the designation of beneficiary form in the presence of the persons designated as witnesses.” Smith, 727 F.Supp. at 237 (emphasis added). The Smith court referred to Black’s Law Dictionary to support its contention that the verb “witness” does not have a presence requirement but primarily means to subscribe for the purpose of attesting authenticity.[6] Id. The court explained that in order for the witness requirement to be meaningful, “a person who is going to be a witness on a designation of beneficiary form either must be present when the insured signs the designation of beneficiary form or must receive at least an oral acknowledgment ...” that the insured signed the form. Id. (emphasis added). The Smith court found the insured’s form invalid because the persons acting as witnesses did not sign the form in the presence of the insured, and the insured did not acknowledge to the witnesses that he had signed the form. Id. at 238. Accordingly, we find that the only two applicable cases cited to us do not require the witness of a FEGLI form to be present if the insured acknowledges his signature to the witness.
¶ 18. Lea also makes a policy argument that Congress intended to create an inflexible rule for administrative convenience. See Metro. Life Ins. Co. v. Manning, 568 F.2d 922, 926 (2nd Cir.1977). However, a more stringent requirement of present witnesses would frustrate the dual Congressional purposes of the regulation: alleviating administrative difficulties with the insurance company and avoiding delays in payment to beneficiaries upon the death of the insured. O’Neal, 653 F.Supp. at 722. When the regulations do not provide for a given factual problem or error, courts have preferred a more commonsense approach in interpreting these regulations. See Metro. Life Ins. Co. v. Hurford, 983 F.Supp. 1045, 1047 (D.Ka.1997) (holding form designating “200%” of insurance proceeds to various beneficiaries in “strict compliance” with regulations); Terry v. Metro. Life Ins. Co., 354 F.3d 527, 528-29 (6th Cir.2004) (stating errors of incomplete signature and date did not invalidate form).
¶ 19. This Court agrees with the O’Neal court that a presence requirement for witnesses is unnecessary because the purpose of a witness is to establish the intent of the insured and make certain the insured voluntarily signed the form. O’Neal, 653 *898 F.Supp. at 722. It is sufficient if the insured specifically tells the witnesses he signed the forms and intends to leave the proceeds to the named beneficiary.
¶ 20. Lea cites several cases where the designation forms were invalidated by the court. Yet, all of these cases contain an omission of an entire element of the statutory requirement. For example, in Metro. Life Ins. Co. v. Dillon, 291 F.Supp.2d 390 (D.Md.2003), the court invalidated the FEGLI designation form. Id. at 393. However, one of two witnesses’ signatures was entirely missing from the form. Id. at 391. Likewise, in Campbell v. Metro. Life Ins. Co., 812 F.Supp. 1173 (E.D.Ok.1992), the witness signature was missing. Id. at 1174. In Ward v. Stratton, 988 F.2d 65 (8th Cir.1993) there were no witnesses at all on a letter to change beneficiaries, and the insured’s information on the form was only partially filled out. Id. at 66.
¶ 21. These cases are distinguishable from the case at bar. In our case, the form is complete and the only issue is whether the second witness is required to be present upon execution. Testimony proves that Johnson expressed both his intent to the witnesses and that the witnesses knew Johnson and were familiar with his signature. There were no missing insured signatures, no missing witness signatures, and no ambiguous intent on the part of the insured. The designation form was completely and properly filled out. Johnson’s intent was clear when, on his deathbed, he requested his co-worker, Marsha Garrett, to obtain the necessary designation forms for his federal benefits and bring them to his home. After Garrett witnessed the forms and will, Johnson explicitly instructed Garrett to take the forms and will to Louise Roberts, another co-worker, to witness. Furthering his intent, Johnson called Roberts and told her he had some papers which he had signed. Garrett delivered the documents to Roberts in due course, and she witnessed them as requested by Johnson. Roberts testified she was familiar with and recognized Johnson’s signature on the forms. Finally, Roberts had numerous conversations with Johnson before he became ill, in which he expressed his intent to marry Rachel Al-more and financially provide for her. It is apparent from these facts that Bernard Johnson’s intended beneficiary was Rachel Almore, who properly received his life insurance proceeds.
¶ 22. Lastly, Almore argues that Lea waived any claim she may have had to the life insurance benefits by failing to exhaust administrative process concerning her competing claim. Almore points out that neither Johnson’s estate nor Lea individually filed any further affirmative pleadings challenging the designation of beneficiary form, except for the temporary restraining order. The Office of Personnel Management (OPM) has promulgated numerous regulations dealing with this issue of competing claims. In order to recover in equity on a FEGLI life insurance policy, the action must be brought against the life insurance company. 5 C.F.R. § 870.101 (2006). Any requests to reconsider an agency’s decision to pay life insurance proceeds must be made according to 5 C.F.R. § 870.105 (2006). Almore contends that the OPM has jurisdiction for adjudication of claims. Thus, Almore argues, by failing to submit a competing claim to the OPM, Lea failed to exhaust her administrative remedies and waived her right to make a claim on the life insurance proceeds. While this issue may have merit, this Court declines to analyze this issue as it is unnecessary to support an affirmance of the trial court order.
¶23. Accordingly, we find under the strict construction of 5 U.S.C. § 8705(a) and 5 C.F.R. § 870.802(b), Bernard John *899 son’s FEGLI beneficiary designation form was valid in that it was properly signed by the insured and witnessed and signed by two other people. This Court finds that an oral acknowledgment by the insured as to his signature is sufficient. Therefore, the judgment of the trial court is affirmed.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.

. Johnson's other federal benefits are not at issue in this appeal as the chancery court held Lea failed to plead these issues. Lea has not contested that ruling before this Court.

. However, both parties agreed at the May 25, 2004 hearing that the life insurance proceeds would never become part of Johnson’s estate. The parties stipulated that the competing claims for the life insurance proceeds were between Almore and Lea individually based on the order of precedence.

. Louise Roberts testified twice during the hearings — first as a witness for Lea and second as a witness for Almore. On redirect examination for Lea, Roberts testified Garrett brought the form to her; Johnson had signed it; and Garrett, not Johnson, asked her to sign it. However, during direct examination, Roberts did state Johnson telephoned her about witnessing his signature on a will in this same package of papers. Then, during her second testimony on direct examination for Almore, Roberts stated:
Q: Now, did you later talk to Mr. Johnson in July of 2003?
A: I believe he called me at work.
Q: When he called you at work what did he tell you?
A: He told me that Marsha [Garrett] was on the way to the office and that he had signed papers and asked me if I would notarize his will.
Q: Did he ask you to witness the paperwork?
A: Yes, sir.
[[Image here]]
Q: If you would tell the Court what happened when Ms. Marsha Garrett brought you that documentation ... ?
A: She [Garrett] brought the paperwork in and asked me to notarize the paperwork and when we looked over the insurance form we realized it did not need notarizing so I signed it as a witness.
[[Image here]]
Q: Based upon your conversation that day with Mr. Johnson and based upon the representations that Ms. Garrett made too did you witness the life insurance beneficiary designation form?
[[Image here]]
A: Yes, I signed as a witness.
Q: By signing as a witness did you at that point indicate Mr. Johnson’s signature — did you verify that was his signature?
A: He told me it was his signature.

. Lea did not file any further affirmative pleadings regarding her competing claim to Johnson's FEGLI life insurance proceeds.

. Even if an executed and filed will attempts to change the beneficiary, this act will have no effect on the beneficiary designated in accordance with this statute. See 5 U.S.C. § 8705(c).

. The verb “witness” is defined as “[t]o subscribe one's name to a deed, will, or other document, for the purpose of attesting its authenticity, and proving its execution, if required, by bearing witness thereto.” Black's Law Dictionary 1603 (6th ed. 1990). Nowhere does this definition mention that the witness must “see” the execution of the signature.