RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LARRY BONNER,
　　*Plaintiff and Counter Defendant-Appellant,*

　　　　　　*v.*

METROPOLITAN LIFE INSURANCE COMPANY,
　*Defendant Counter Plaintiff and Third Party
Defendant-Appellee,*

DOROTHY EWING WILLIAMS,
　　　　*Third Party Defendant-Appellee.*

No. 09-6085

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-02591—Bernice B. Donald, District Judge.

Argued: August 4, 2010

Decided and Filed: September 15, 2010

Before: SILER and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Marc I. Baretz, ATTORNEY AT LAW, West Memphis, Arkansas, for Appellant. Lowell David Kass, METROPOLITAN LIFE INSURANCE COMPANY LAW DEPARTMENT, New York, New York, Gregory D. Cotton, COTTON LAW FIRM, Memphis, Tennessee, for Appellees. **ON BRIEF:** Marc I. Baretz, ATTORNEY AT LAW, West Memphis, Arkansas, for Appellant. Gregory D. Cotton, COTTON LAW FIRM, Memphis, Tennessee, Kenneth P. Jones, BOURLAND, HEFLIN, ALVAREZ, MINOR & MATTHEWS, PLC, Memphis, Tennessee, for Appellees.

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

CLELAND, District Judge.  A beneficiary designation must be "signed" to be effective under the Federal Employees Group Life Insurance Act ("FEGLIA").  The only issue in this case is whether former federal employee James Williams, Jr., "signed" a beneficiary designation form in 1996.  The district court concluded, as a matter of law, that he did not, and we **AFFIRM**.

## I.  BACKGROUND

**A.     Factual Background**

James Williams, Jr. ("James") was employed by the United States Army Corps of Engineers and was covered by a Federal Employee Group Life Insurance ("FEGLI") policy issued by Defendant-Appellee Metropolitan Life Insurance Company ("MetLife").  In March 1995, James filled out a standard "Designation of Beneficiary" form ("1995 Designation") designating his then-fiancée Dorothy Williams ("Dorothy") as the beneficiary of his FEGLI policy.  James printed his name in the space that called for a printed name and address and he signed, in cursive, inside the box labeled "Signature of Insured."   Two witnesses signed the form and a box was checked indicating that the two-witness requirement had been met.  Although the witnesses were not named as beneficiaries, the box stating "Neither witness is named as a beneficiary" was left blank.  James was never married to Dorothy, but she was listed as his wife on the form.

On July 20, 1996, James married Betty Williams ("Betty").  Three days later, James filled out a second "Designation of Beneficiary" form (the "1996 Designation").  On this form, he designated Betty as the beneficiary of 100% of the proceeds.  As with the 1995 Designation, two witnesses signed the form as "Witnesses to Signature," and James checked the box stating that he had signed the form in the presence of two witnesses.  James printed his name in the space, "PRINT OR TYPE NAME AND

ADDRESS (including ZIP code) OF INSURED." However, the box calling for "Signature of Insured" was left blank.

James died on March 18, 2009. Upon James's death, the FEGLI policy proceeds, amounting to $280,000, became payable. The federal government forwarded the two beneficiary designation forms to MetLife, which in turn received claims for the policy proceeds from the following persons: Betty (claiming under the 1996 Designation), Dorothy (claiming under the 1995 Designation), and Third-Party Defendant Rosie Lee Troup Williams ("Rosie Lee")[1] (claiming as the insured's widow).

MetLife denied Betty's claim because it concluded that James did not sign the 1996 Designation. MetLife asserts that the proceeds should be paid to Dorothy because she was designated as the beneficiary in the last designation that met the statutory requirements.

**B.    Procedural Background**

Betty filed suit against MetLife in the United States District Court for the Western District of Tennessee on September 15, 2008, seeking a declaratory judgment that she is entitled to the FEGLI policy proceeds. MetLife filed a counterclaim against Betty and a third-party complaint against Dorothy and Rosie Lee, seeking a declaratory judgment that Dorothy is entitled to the FEGLI policy proceeds. Betty died on April 18, 2009, and the district court substituted Appellant Larry Bonner, administrator of Betty's estate, as Plaintiff in the case.

The parties filed motions for summary judgment. The district court denied Bonner's motion and granted MetLife's and Dorothy's motions. The district court noted that other courts that have addressed similar arguments "have held that the handwritten name of the insured individual in a separate section does not satisfy the statute's requirements because the statute must be strictly construed and it requires a 'signature.'" R. 32 at 6 (citing *Thomas v. Metro. Life Ins. Co.*, 921 F. Supp. 810, 811-12 (D.D.C.

---

[1]Rosie Lee was married to James in 1976. She filed an answer but did not participate in the summary judgment motion practice in the district court. She is not a party to this appeal.

1996), *aff'd*, 111 F.3d 963 (D.C. Cir. 1997); *Hightower v. Kirksey*, 157 F.3d 528, 531 (7th Cir. 1998)).  The district court could find no basis to conclude that the 1996 Designation was signed given that the allotted space for a signature "is clearly labeled as a signature line and 'glaringly left blank.'"  *Id.* at 7 (quoting *Thomas*, 921 F. Supp. at 811). The district court concluded the 1995 Designation was valid and therefore directed that the benefits be paid to Dorothy.  *Id.* at 7.

Bonner filed a motion to alter or amend the judgment and for rehearing, which the district court denied.  Bonner now appeals.

## II.  ANALYSIS

### A.      Standard of Review

We review *de novo* the district court's grant of summary judgment.  *Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004).  "[A]s a general matter, the appeal from the denial of a Rule 59(e) motion is treated as an appeal from the underlying judgment itself."  *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

## B.    FEGLIA

### 1.    Background

"'Congress enacted FEGLIA in 1954 to provide low-cost group life insurance to Federal Employees.'" *Terry*, 354 F.3d at 530 (quoting *Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 576 (7th Cir. 1992)).   FEGLIA establishes the following order of preference for the payment of life insurance benefits:

> First, to the beneficiary or beneficiaries designated by the employee in a *signed* and witnessed writing received before death in the employing office . . . . For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

> Second, if there is no designated beneficiary, to the widow or widower of the employee.

5 U.S.C. § 8705 (emphasis added).  The Code of Federal Regulations further provides that a "designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people."  5 C.F.R. § 870.802.

The "signed" writing requirement was added to the statute in 1966 when Congress "tighten[ed] up the requirements for designating a beneficiary." *Terry*, 354 F.3d at 531.  The prior version of the statute merely required that "the insured designate a beneficiary in a 'writing received in the employing office prior to death.'" *Id.* (quoting S. Rep. No. 89-1064, reprinted in 1966 U.S.C.C.A.N. 2070, 2071).  Courts widely recognize that this change was a "reaction to cases that looked to a decedent's 'manifest intent,' rather than to strict compliance with civil service regulations, in determining the proper beneficiary." *Id.*; *Hightower v. Kirksey*, 157 F.3d 528, 530-31 (7th Cir. 1998); *O'Neal v. Gonzalez*, 839 F.2d 1437, 1440 (11th Cir. 1988).

Specifically, the amendment was a reaction to *Sears v. Austin*, 292 F.2d 690 (9th Cir. 1961), in which the insured had executed a holographic will that devised his federal life insurance proceeds to a caretaker.  Even though this designation did not comply with the Civil Service Commission Regulations, the Ninth Circuit held that the designation

by will was sufficient because the "clearly manifested intent of the insured should control." *Id.* at 693. The Senate Report on the 1966 amendment addressed this case:

> The equities in Sears may have prompted the court of appeals to disregard the civil service regulation and the general intent of the statute in order to comply with the insured's wishes, but the precedent established in that case could, if generally followed, result in administrative difficulties for the Civil Service Commission and the insurance companies and, more important, seriously delay paying insurance benefits to survivors of Federal employees.
>
> To clarify Congress' intent, H.R. 432 rewrites section 4 to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary unless the designation has been properly received in the employing office or by the Civil Service Commission.

S. Rep. 89-1064.

This Court has previously recognized that "in the 1966 amendments to FEGLI, Congress, on administrative efficiency grounds, abolished the manifest intent test." *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). In so doing, Congress created "an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case." *O'Neal*, 839 F.2d at 1440.

### 2.	"Signed"

FEGLIA does not contain a provision defining the term "signed." Appellant argues that the definition of signed should be taken from 1 U.S.C. § 1 and state law, which both look to the insured's intent when making a mark or writing. MetLife does not provide an alternative definition but argues that these definitions cannot apply to FEGLIA because they require an examination of the insured's intent.

When addressing nearly identical circumstances, courts have generally not expounded on the definition of "signed." Instead, courts have noted that FEGLIA requires strict compliance and then concluded that the beneficiary designation form was not signed. *See Hightower*, 157 F.3d 528; *Metro Life Ins. Co. v. Ensign*, No.

3:98CV41(AWT), slip. op. (D. Conn. Sept. 7, 2000), *appeal dismissed*, No. 00-9278, slip. op. (2d Cir. Feb. 22, 2001); *Thomas v. Metro. Life Ins. Co.*, 921 F. Supp. 810 (D.D.C. 1996), *aff'd*, 111 F.3d 963 (D.C. Cir. 1997) (unpublished).

For instance, in *Thomas*, the insured had filled out three beneficiary designation forms. 921 F. Supp. at 811. The insured properly filled out the first two forms, signing in the box marked "Signature of Insured." *Id.* The third form contained the insured's printed name and address, a checked box stating "I have signed this form in the presence of two witnesses who have signed below," and the signature of two witnesses. *Id.* However, the box for "Signature of the Insured" was left blank. *Id.*

The district court concluded that the third form was not signed as required by FEGLIA. *Id.* The court noted that FEGLIA requires strict compliance and found the acts of printing a name and checking a box indicating that the insured had signed were insufficient to constitute a signature. *Id.* The court reasoned that:

> [a]lthough there is no requirement that a designation of beneficiary be submitted on any particular form, here the decedent used a standard form which clearly indicated the proper place to affix his signature. That box was glaring[ly] left blank. Strictly construing the statute, the Court finds no basis for concluding that the form was "signed" based on his handwritten name on the line designated as the area to "Print or type name" and a checkmark in a box. Decedent had previously completed such forms in a proper manner, and thus he clearly knew how to do so. Furthermore, in several places, the form tells the policy holder that it must be signed.

*Id.* at 811-12. On appeal, the D.C. Circuit affirmed "because the evidence proffered in the summary judgment pleadings failed to demonstrate the existence of sufficient evidence from which a reasonable jury could conclude by a preponderance that the insured in this case intended to sign the contested form merely by printing his name in the informational entries." 1997 WL 159426 (D.C. Cir. Feb. 24, 1997).

On the other hand, the court in *Metro. Life Ins. Co. v. Grant*, No. 96-136-Civ-Oc-10B, slip. op. (M.D. Fla. July 7, 1997), reached the opposite conclusion when faced with virtually identical facts, i.e., an earlier designation with a cursive signature in the

signature box and then a subsequent designation with only a printed name in the informational space. The *Grant* court applied 1 U.S.C. § 1, which states, "In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . 'signature' or 'subscription' includes a mark when the person making the same intended it as such." The court concluded that there existed a question of fact as to whether the insured intended the markings on the form to constitute a signature. *Id.* at 23a. The court rejected the *Thomas* approach because "there is no specific statutory requirement with which strict compliance would be required, that [the insured] ran afoul of in failing to sign the designated signature line." *Id.* at 22a. Because there was a question concerning the insured's intent, the court concluded that the case was not ripe for summary judgment. *Id.* at 23a.

This Circuit has not encountered a situation where the signature line was left completely blank. But we have addressed the sufficiency of a signature in which the insured applied only her first name to the form. *Terry*, 354 F.3d 527. In *Terry*, we held that the designation was valid under FEGLIA, reasoning:

> [s]urely no court would declare any signature less than "Earline Lynn Gamble" to be invalid. If "Earline L. Gamble" would have been sufficient, or even "Earline Gamble," then why not simply "Earline"? Because Gamble's abbreviated *signature appears in the proper space on the designation-of-beneficiary form* duly filed with the Postal Service, and no one questions either the authenticity of her signature or the fact that it was properly witnessed, we see no reason not to give the designation its full effect.

*Id.* at 533 (emphasis added).

In reaching this conclusion, we looked to what suffices as a signature under general contract law and the U.C.C. We resorted to these sources, however, only because the plaintiff cited them and the third-party defendants failed to explain or cite any authority demonstrating that this law was inapposite. *Id.* To set out more precisely a uniform definition, we now conclude that the definition of "signature" found in 1 U.S.C. § 1 applies when assessing whether a beneficiary designation is "signed" for purposes of FEGLIA.

The United States Code's definition of "signature" is consistent with general contract law and the U.C.C., to which we looked in *Terry*.  *See* U.C.C. § 1-201(b)(37) (defining "signed" as "using any symbol executed or adopted with present intention to adopt or accept a writing"); Restatement (Second) of Contracts § 134 (defining "signature" as "any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer").  Congress has mandated that when ascertaining the meaning of federal statutes, the definitions in 1 U.S.C. § 1 should govern.  Nothing in FEGLIA warrants finding that the "context indicates otherwise." 1 U.S.C. § 1.  Although the word "signature" is not identical with "signed," each word is used to define the other.  *See* Merriam-Webster's Collegiate Dictionary (10th ed. 1999) (defining "sign" as "to affix a signature to" and defining "signature" as "the act of signing one's name").

MetLife argues that this formulation of "signed" "would require courts to speculate about an insured's intent, an exercise which Congress has specifically prohibited."  (MetLife's Br. 17.)  Nowhere in the statute, however, does Congress "specifically prohibit" consideration of an insured's intent.  Rather, courts have widely recognized that, in amending FEGLIA in 1966, Congress sought to abolish the practice by some courts of balancing the equities to divine an insured's "manifest intent" as to whom the insured desired to be a *beneficiary* of the policy—not to determine whether the insured had intended to *sign* the document in the first instance.

An over-reliance on Congress's purported purpose in amending FEGLIA in 1966 seems to have led some courts to take a short cut in the analysis of whether a document has been signed.  There is, we believe, a flaw in the reasoning of courts that have said only that the statute must be "strictly construed," and then moved quickly to conclude that such "strict construction" requires finding that the form at issue in the case was not signed.  These courts seem to be conflating a construction of the statute itself with a construction of the standardized beneficiary designation form.  A strict or literalist construction of the beneficiary designation form would, perhaps, lead to requiring a signature in the designated box marked "Signature of Insured."  But, whether the process

of statutory construction in this case be viewed as "strict," "lenient," "reasonable," or of any other species, *see* Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 23 (1997), an examination of the statute reveals simply that the form must be "signed" and "witnessed."  A question may remain, however, about what constitutes compliance with those provisions of FEGLIA; Congress having added the "signed" requirement to the statute does not necessarily mean that it has utterly forbidden inquiry into the maker's intent in evaluating what constitutes a "signed" writing.

## C.      Discussion

As quoted above, a signature "includes a mark when the person making the same intended it as such."  1 U.S.C. § 1.  The question then is whether a reasonable jury could find that there is "a mark" on the 1996 Designation that James intended as his signature. Although questions of intent are typically determined by a jury, *see Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993), in this case, based on the evidence presented, no reasonable jury could conclude that James intended to sign the form designating his life insurance benefits to Betty.  *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) ("Cases involving state of mind issues are not necessarily inappropriate for summary judgment.").

James printed his name in the space provided for a printed name on both the 1995 Designation and the 1996 Designation.  He signed his full name in cursive on the 1995 Designation in the appropriate space, yet the space for a signature on the 1996 Designation was "glaring[ly] left blank."  *Thomas*, 921 F. Supp. at 811.  There was no other writing, printing, marking, or anything else within the signature box or in its vicinity;  nor was there anything resembling a cursive signature anywhere at all on the form.  Based on these facts, there is simply no "mark" on the 1996 Designation that could be reasonably construed to have been "intended as" a signature by James.  1 U.S.C. § 1.

Contrary to the *Grant* court's reasoning, James's printed name on the 1996 Designation does not create a triable issue as to whether that mark constitutes a signature.  The name was printed in the space entitled, "PRINT OR TYPE NAME AND

ADDRESS (including ZIP code) OF INSURED," and cannot be construed as an attempt to authenticate the document. Nor can the check mark in the box, stating, "I have signed this form in the presence of the two witnesses who have signed below." Presuming that it was James who checked the box, it could at best demonstrate that James *thought* he had signed, but it cannot be construed as the "mark" that James intended to be the very signature that he was asserting, by checking the box, that he had already applied somewhere else on the form. 1 U.S.C. § 1. Also, the signature of the two witnesses who signed the form as "witnesses to signature" does not change the fact that there is no mark on the designation that could be construed as a signature. Given the additional facts that the signature box remained empty while James had previously—and fairly recently— signed in cursive within the signature box on an identical form, the evidence is "so one-sided" that MetLife and Dorothy "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We follow the D.C. Circuit's line of reasoning in *Thomas*, and likewise conclude that, based on the evidence proffered, there is insufficient evidence for a reasonable jury to conclude that James intended to sign the 1996 Designation merely by printing his name in the informational space or by checking the I-have-signed box.[2] *Thomas*, 1997 WL 159426.

Because the 1996 Designation Form was not signed, the proceeds of the life insurance policy are payable to Dorothy under the 1995 Designation. Although this form contains irregularities—such as Dorothy's being named as James's wife, unchecked boxes, and the date listed simply as "March"—none of these irregularities affect a statutory requirement. The 1995 Designation was "signed" and in a "witnessed writing." 5 U.S.C. § 8705. It is therefore effective.

Appellant argues that James was an uneducated deckhand, who had previously demonstrated that he was unable to fill out forms correctly as shown by the 1995 Designation. (Appellant's Br. 22.) Further, according to Appellant, the form is not

---

[2]We do not say here that a valid signature must always appear within the lines of the standard form's signature box. It is certainly possible to imagine that a signature or other equivalent "mark" could be made so clearly, or so near the place provided for "signature" that, at a minimum, a triable issue of fact could be identified as to the maker's "intent to sign."

"user friendly" because the space for a signature is not directly below the space for a printed name. (*Id.*) These arguments amount to an invitation for the court to excuse the signature requirement in this case. They do not point to evidence that James intended for a mark on the 1996 Designation to constitute his signature. FEGLIA requires a "signed" writing, and "if the language of a statute is clear, that language must be given effect." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 452 (1987) (Scalia, J., concurring). The statute does not contain exceptions for uneducated persons or for forms that are viewed as insufficiently friendly. *See Hightower*, 157 F.3d at 531.

Similarly, Appellant appeals to the equities in the case by arguing that the district court's decision awarded the proceeds of the life insurance policy "to a woman who refused to be the wife of the Deceased, who did not attend his funeral, and who[m] Deceased specifically acted to revoke/replace as the wife/beneficiary for his proceeds assuming such prior designation naming Dorothy Williams as his 'wife' was effective."[3] (Appellant's Br. 25.) Appellant's argument is unavailing. Even in the presence of digressive equities indicating that the result might be contrary to the maker's generalized intent, a common-sense application of FEGLIA leads to the conclusion that the beneficiary designated in accordance with the statute—endorsed with a "mark . . . intended" to be a signature—is entitled to receive the proceeds. 1 U.S.C. § 1; *O'Neal*, 839 F.2d at 1440.

### III. CONCLUSION

The 1996 Designation was not "signed," and we therefore **AFFIRM** the district court's grant of summary judgment in favor of MetLife and Dorothy Williams.

---

[3] Although not relevant to a determination in this case, Appellant may well be overstating his equitable argument. According to Dorothy, she and James remained friends until his death and "never stopped dating, more or less." (Dorothy Dep., R. 28-1 at 13.) James apparently called Dorothy every morning to wake her up, and he would stop by her house to check on her occasionally. (*Id.* at 15-16.) Dorothy did not attend the funeral because, she said, she did not learn that James had died until the morning of the funeral. (*Id.* at 18-19.)