# United States Court of Appeals
## For the First Circuit

No. 24-1951

KATHLEEN F. HEBERT; TREVOR PARKER HEBERT; ZACHARY R. HEBERT,

Plaintiffs, Appellees,

v.

KARISSA DONAHUE, as Personal Representative of the Estate of
Tiffany Donahue-Hebert, deceased,

Defendant, Appellant,

METROPOLITAN LIFE INSURANCE CO.; U.S. OFFICE OF PERSONNEL
MANAGEMENT,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. M. Page Kelley, U.S. Magistrate Judge]

Before

Gelpí, Thompson, and Kayatta,
Circuit Judges.

Donald J. Correa, with whom Quinn, Correa & Gaynor, P.C., was
on brief, for appellant.

Kristopher Aleksov for appellees.

February 5, 2026

**GELPÍ**, **Circuit Judge**.  This case arises from a dispute over the proceeds of the federal life insurance policy of Gary Hebert ("Mr. Hebert").  Mr. Hebert was a United States Postal Service ("USPS") employee insured pursuant to the Federal Employees' Group Life Insurance Act, 5 U.S.C. § 8701 et seq. ("FEGLIA").  Shortly before his death from esophageal cancer, Mr. Hebert executed a designation of beneficiary form ("the form" or "the designation form").  He named Plaintiff-Appellees -- his ex-wife Kathleen Hebert ("Ms. Hebert") and his sons Trevor and Zachary Hebert (collectively with Ms. Hebert, "the Heberts") -- as his beneficiaries.  But he failed to fully complete the form, leading to this litigation.

Under FEGLIA, if Mr. Hebert properly executed the designation form, then his designation governs the distribution of his life insurance benefits.  If not, then the proceeds of his life insurance go to the estate of his widow, Tiffany Donahue-Hebert ("Mrs. Donahue-Hebert").  The district court held that the form met all of the statutory requirements, and that there was no evidence Mr. Hebert lacked mental capacity when he executed the form.  Defendant-Appellant Karissa Donahue ("Ms. Donahue"), who is the daughter and personal representative for the estate of Mrs. Donahue-Hebert, now appeals from the district court's entry

of judgment for the Heberts.[1]  Because we see no error below, we affirm.

## I.

### A.    Factual Background

The following facts are not in dispute.  Gary and Kathleen Hebert married in 1991.  Over the course of their marriage, they had two sons together, Trevor and Zachary Hebert.  Mr. Hebert and Ms. Hebert divorced in 2015, and the next year, Mr. Hebert remarried to Mrs. Donahue-Hebert.  In 2016, Mr. Hebert was also diagnosed with Stage IV esophageal cancer.  Due to his illness, Mr. Hebert was in and out of the hospital for treatment in 2016 and early 2017.  Mrs. Donahue-Hebert was also hospitalized with a serious medical condition during this time.  As such, in early 2017, Mr. Hebert was staying with Mrs. Donahue-Hebert's sister and other daughter.[2]  During the month of January, they drove him to the hospital because they believed Mr. Hebert was "experiencing confusion."  The hospital discharged Mr. Hebert the same day and Kevin Levesque, Mr. Hebert's friend since childhood, picked him up.  Levesque drove Mr. Hebert to Ms. Hebert's house,

---

[1] The parties consented to proceed before the magistrate judge.  28 U.S.C. § 636.

[2] For ease of reference, Mrs. Donahue-Hebert's sister and other daughter will hereinafter be referred to by their relationship with Ms. Donahue -- in other words, as Ms. Donahue's sister and aunt.

- 4 -

where he stayed with her and their sons for the remainder of his life.

Prior to his death, Mr. Hebert worked for USPS and enrolled in a Federal Employees' Group Life Insurance ("FEGLI") policy. On January 26, 2017, while staying with Ms. Hebert and their sons, Mr. Hebert prepared and signed a designation form for his FEGLI policy. He named Ms. Hebert and his sons as the beneficiaries and signed in the presence of two witnesses: Levesque, and Lorraine Sawyer, a USPS employee and colleague. Levesque and Sawyer both signed on the witness signature lines and provided their addresses.

When Mr. Hebert prepared the designation form, he did not fully complete Section C, "Statement of Insured or Assignee." That section includes spaces for the preparer's name and address, and checkboxes to indicate whether the preparer is the insured or an assignee. It also directs the preparer to "Please check all three: I have not assigned the Insurance. Two people who witnessed my signature signed below. I did not name either witness as a beneficiary." Mr. Hebert left the space for his name and address blank, and he did not mark any of the checkboxes. But he signed and dated the form where indicated.

Ms. Hebert sent the designation form to the Human Resources Shared Service Center ("HRSSC") at USPS via overnight mail. Per a letter dated January 31, 2017, HRSSC "received the

- 5 -

enclosed Designation of Beneficiary Standard Form(s) (SF): SF 2823, *Designation of Beneficiary Federal Employees' Group Life Insurance Program*." But the form was "returned unprocessed" because "Section C information [was] omitted on the [designation form]." The letter directed Mr. Hebert to complete the missing information. On February 14, 2017, Mr. Hebert asked Ms. Hebert to complete Section C. He did not fill out a new form, so his signature remained from January 26. Mr. Hebert died the next day, February 15, and Ms. Hebert faxed the form back to HRSSC on February 16. HRSSC rejected the form a second time because it was received after Mr. Hebert's death.

Thus, at the time of Mr. Hebert's death, HRSSC did not have a designation form for his life insurance. Under FEGLIA, when the insured does not designate a beneficiary, the benefits are distributed according to an order of precedence. 5 U.S.C. § 8705(a). In this case, Mrs. Donahue-Hebert was the statutory beneficiary if Mr. Hebert did not properly designate another beneficiary. Mrs. Donahue-Hebert passed away in 2020, while this litigation was pending. Her daughter, Ms. Donahue, now proceeds in her stead.

## B.    Procedural Background[3]

In July 2018, the Heberts brought a lawsuit against Mrs. Donahue-Hebert, the Office of Personnel Management ("OPM"), and the Metropolitan Life Insurance Company.[4]  The Heberts sought a declaration that the designation form submitted in January 2017, which HRSSC returned as unprocessed, was valid.[5]  In October 2019, the district court converted the suit into an interpleader proceeding.

On May 10, 2022, the district court entered a memorandum and procedural order.  Among other things, the May 2022 memorandum concluded: "Although the employee did not completely fill out every aspect of the beneficiary form, he executed all aspects required under [FEGLIA]."  Hebert v. OPM, Civil Action No. 18-11483-DPW, 2022 WL 22895040, at *1 (D. Mass. May 10, 2022).  But the district court also offered the parties "a last opportunity to develop the record further" before entry of final judgment.  Id.

During subsequent briefing, Ms. Donahue raised two new issues for the district court to consider: whether Mr. Hebert's

---

[3] This case's procedural history dates back seven and a half years.  We recite it here only as necessary to provide context for this appeal.

[4] Metropolitan issued the life insurance policy and OPM administered it.  They are not parties to this appeal.

[5] And, therefore, that they are Mr. Hebert's life insurance beneficiaries.

- 7 -

signature was authentic, and whether he had the mental capacity to designate beneficiaries on January 26, 2017. In January 2024, the court held an evidentiary hearing to hear testimony on these two issues. Numerous witnesses testified and were cross-examined, including Ms. Donahue, Ms. Donahue's sister and aunt, Ms. Hebert, Levesque, and Sawyer.

After the evidentiary hearing, Ms. Donahue subpoenaed Mr. Hebert's medical providers, who "took quite a while" to respond to her. The providers refused to release Mr. Hebert's records absent authorization by the patient, his next of kin, or his personal representative, or absent a court order. Upon request, Ms. Hebert refused to authorize the records' release.

On March 22, 2024, Ms. Donahue filed a document titled "Defendant Status Report and Response to Briefing Schedule" and, after a line break, "Defendant Request for Discovery." She requested "a court order to obtain any and all relevant medical records for Gary Hebert including, but not limited to, any hospital and hospice care for one year prior to Gary Hebert's death o[n] February 15, 2017." She also "propose[d] that the court allow [ninety] days to complete discovery."

On March 25, the court entered an electronic order granting an additional sixty days to complete discovery. The new discovery deadline was May 24, 2024. Although Ms. Donahue understood this electronic order to be a denial of her request for

a court order, she did not follow up at the time, and the parties filed cross-motions for summary judgment in June 2024.

On July 12, 2024, Ms. Donahue filed an "Emergency Motion" to, in relevant part, obtain the medical records. The motion summarized her efforts to obtain the records and blamed Ms. Hebert for being "noncooperative." Ms. Donahue claimed that because Ms. Hebert did not authorize release of the records, she needed a court order to obtain them, and that without the records, she could not prepare a "proper" response to the Heberts' summary judgment motion. Finally, Ms. Donahue requested "a reasonable extension of time" -- until the medical records could be "obtained" -- to respond to the Heberts' motion for summary judgment.

The court denied the request for an order, reasoning that it was essentially a motion to reopen and extend the time for discovery. In doing so, the court pointed to Ms. Donahue's delay, her failure to "identif[y] what records she requires or describe[] 'any relevant leads' these new records might generate," and the fact that she never "moved to compel the production of these records or properly sought the court's assistance to obtain them."[6]

---

[6] The parties dispute whether Ms. Donahue unreasonably delayed in her efforts to obtain Mr. Hebert's medical records. The Heberts argue that Ms. Donahue knew as early as November 2019 that she would need the records. But Ms. Donahue contends she was not on notice until the hearing in January 2024. As discussed in Section II.A. below, ultimately this dispute does not impact our decision.

On September 16, 2024, the court denied Ms. Donahue's motion for summary judgment, and granted summary judgment for the Heberts. The opinion did not reconsider whether the designation form Mr. Hebert signed in January 2017 was valid. Instead, the court adopted the May 2022 memorandum's conclusion that Mr. Hebert "made a valid designation of his beneficiaries under [FEGLIA]." Hebert v. OPM, Civil Action No. 18-11483-MPK, 2024 WL 4892666, at *4 (D. Mass. Sep. 16, 2024) (citation modified). The court further concluded that Ms. Donahue had not shown that Mr. Hebert lacked the mental capacity to designate a beneficiary: "There is simply no evidence before this court which shows that [Mr. Hebert] lacked the capacity to contract on the date he signed the [designation form], and the testimony taken in this case indicates otherwise."[7] Id. at *7. This appeal followed.

## II.

Ms. Donahue presents three claims of error on appeal. First, she argues that the district court abused its discretion when it denied her motion for a court order to produce Mr. Hebert's

---

[7] As to the testimony, the court noted that Levesque and Sawyer both "gave 'very clear' testimony that [Mr. Hebert] appeared mentally competent and able to fully understand the significance of his actions when they witnessed him sign the [form]." Id. at *7. Ms. Hebert similarly testified that she "had no concerns" about his mental capacity. Id. Ms. Donahue, her sister, and her aunt testified to the contrary, but their last encounters with Mr. Hebert were anywhere from four days to a week and a half before he signed the designation form. Id.

- 10 -

medical records.  Second, she contends that the district court erred when it determined that Mr. Hebert's designation form was valid.  And third, she asserts in the alternative that Mr. Hebert lacked the mental capacity to execute a valid designation form when he named the Heberts as his beneficiaries.  We address each claim seriatim.

## A.    Requests for Additional Discovery

We begin with Ms. Donahue's challenge of the district court's decision to deny her discovery requests for Mr. Hebert's medical records.  She argues that the records "were essential to determine [Mr. Hebert's] mental capacity to designate a beneficiary."  She further argues that she did not cause the delay and instead attributes it to Ms. Hebert and the district court.

Whether we construe Ms. Donahue's requests as motions to extend the discovery deadline, as the district court did, or as motions to compel discovery, we review the district court's decision for abuse of discretion.  Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 26 (1st Cir. 2013) ("[A]ppellate review of a district court's case management orders, such as a scheduling order, is solely for abuse of discretion."); Bonner v. Triple-S Mgmt. Corp., 68 F.4th 677, 684 (1st Cir. 2023) ("We review the court's denial of the motion to compel for abuse of its considerable discretion." (citation modified)).  Review for abuse of discretion "is not appellant-friendly, and we will

- 11 -

intervene . . . only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Triple-S Mgmt. Corp., 68 F.4th at 684 (citation modified). A district court enjoys "broad discretion in ruling on pre-trial management matters." Id. (citation modified).

Ms. Donahue's first request for a court order, filed in March 2024, was appended to a "Status Report and Response to Briefing Schedule" as a "Request for Discovery." In a single sentence, she asked for "a court order to obtain any and all relevant medical records for Gary Hebert including, but not limited to, any hospital or hospice care for one year prior to Gary Hebert's death o[n] February 15, 2017." Thus, her request lacked any detail, such as the doctors or medical facilities that had those records, what subpoenas needed enforcement, or whether notice had been given to the doctors or facilities, as required by Federal Rule of Civil Procedure 45(d)(2)(B)(i).

Given these facts, we conclude that Ms. Donahue did not file a proper motion for the court to act on. Cf. Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008) ("[I]n its omnibus opposition . . . [plaintiff] stated 'in the event that the Court finds that the Amended Complaint fails to state a claim, Plaintiff requests leave to replead.' This statement does not constitute a motion to amend a complaint."). And absent a motion

for court order, it was within the district court's discretion to deny Ms. Donahue's request implicitly by not addressing it. Cf. Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc., 778 F.3d 228, 247 (1st Cir. 2015) (noting the plaintiffs did not make a "proper request" to amend their complaint, "only a mention in a footnote," and so it was "within the court's discretion to deny leave to amend implicitly by not addressing the request" (citation modified)).

We turn to Ms. Donahue's "Emergency Motion" filed in July 2024. She again requested, among other things, a court order to produce all of Mr. Hebert's medical records from the year preceding his death. As the district court noted, "[w]hile not styled as a motion to extend the discovery deadlines in this case, Donahue's Emergency Motion seeks to do just that."

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Additionally, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Thus, for the district court to grant Ms. Donahue's July 2024 discovery motion, she needed to show both "good cause" and "excusable neglect."

Good cause "emphasizes the diligence of the party seeking" the extension. O'Connell v. Hyatt Hotels of P.R., 357

- 13 -

F.3d 152, 155 (1st Cir. 2004). And the excusable neglect standard "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). The relevant circumstances include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.; see also Tubens v. Doe, 976 F.3d 101, 105-06 (1st Cir. 2020) (discussing application of the Pioneer factors under Rule 6(b)). "While each potential factor should be weighed . . . the most important is the reason for the particular oversight." Tubens, 976 F.3d at 105 (citation modified).

This case does not present a close question. As a starting point, we are skeptical of Ms. Donahue's contention that it was not clear she would need the medical records until the evidentiary hearing. She was the party who challenged Mr. Hebert's competence, and she did so before the evidentiary hearing. But even if we accept that contention, Ms. Donahue has not explained why, after the court extended the discovery deadline in March 2024, she did not then file a motion for a court order promptly. While Ms. Donahue took the court's electronic order extending the deadline as a denial of the discovery request, it is evident that

she knew or should have known that she needed to file a motion, given that she filed one in July 2024.  There is no other apparent reason on the record for her failure to file a motion before the end of discovery.

Under these circumstances, we cannot conclude that Ms. Donahue had good cause or showed excusable neglect.  It is axiomatic that "district courts are endowed with sweeping case-management authority," including "the power to set deadlines . . . [and] to insist upon compliance with those deadlines."  Rivera-Aponte v. Gomez Bus Line, Inc., 62 F.4th 1, 6 (1st Cir. 2023) (citation modified).  And as we have previously observed, "litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril."  O'Connell, 357 F.3d at 155 (citation modified).  When Ms. Donahue finally moved for a court order to access Mr. Hebert's medical records six years into litigation, the extended discovery period had already closed, and the parties had filed cross-motions for summary judgment.  We discern no abuse.

### B.  Motion for Summary Judgment

Ms. Donahue challenges the district court's decision denying her motion for summary judgment (and granting the Heberts' motion) on two fronts.  First, she asserts that both beneficiary designation forms were invalid.  Second, she argues in the

alternative that Mr. Hebert was not mentally competent when he executed the first form, and that his competence was a material fact in dispute.

We "review a district court's grant or denial of summary judgment de novo, examining the record in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor." Dusel v. Factory Mut. Ins., 52 F.4th 495, 502-03 (1st Cir. 2022). A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are material if they 'might affect the outcome of the suit under the governing law.'" Dusel, 52 F.4th at 503 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). As such, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

### 1.    The Designation Forms

Ms. Donahue argues that the district court erred when it determined that the beneficiary form Mr. Hebert executed in January 2017 was valid. She belabors the importance of the omitted information, and points to the fact that HRSSC rejected the first form. She further asserts that the second, completed form was also invalid because HRSSC received it after Mr. Hebert's death.

The Heberts counter that the district court reached the right conclusion in its "well-reasoned" memorandum, and we agree.

Congress enacted FEGLIA, 5 U.S.C. § 8701 et seq., to "provide low-cost group life insurance to Federal employees." Hillman v. Maretta, 569 U.S. 483, 486 (2013) (quoting H.R. Rep. No. 83-2579, at 1 (1954)). With respect to the designation of a beneficiary, FEGLIA states:

> Except as provided in subsection (e), the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
>> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . . . For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
>>
>> Second, if there is no designated beneficiary, to the widow or widower of the employee.

5 U.S.C. § 8705(a).

Ms. Donahue correctly notes that FEGLIA is "strictly construed." Hightower v. Kirksey, 157 F.3d 528, 531 (7th Cir. 1998); see also Bonner v. Metro. Life Ins., 621 F.3d 530, 533 (6th Cir. 2010) ("Congress created 'an inflexible rule that the beneficiary designated in accordance with the statute would

- 17 -

receive the policy proceeds, regardless of other documents or the equities in a particular case.'" (quoting O'Neal v. Gonzalez, 839 F.2d 1437, 1440 (11th Cir. 1988))). Thus, according to Ms. Donahue, since HRSSC returned Mr. Hebert's designation form unprocessed, the form did not comply with § 8705.[8] Ms. Donahue, however, "seem[s] to be conflating a construction of the statute itself with a construction of the standardized beneficiary designation form." Bonner, 621 F.3d at 535 (discussing how "[a] strict or literalist construction of the beneficiary designation form would, perhaps, lead to requiring a signature in the designated box marked 'Signature of Insured.'").

Courts considering the validity of designation forms under FEGLIA have uniformly looked to the statutory requirements of "a signed and witnessed writing." 5 U.S.C. § 8705(a). When designation forms are (1) signed and (2) witnessed, courts find the forms to be valid, regardless of other irregularities. See Terry v. LaGrois, 354 F.3d 527, 528-29 (6th Cir. 2004) (affirming validity of a signed and witnessed designation form though the insured signed "with only her first name, failed to date the form, and neglected to check a box acknowledging that she had signed in

---

[8] She also argues that the designation form did not comply with the pertinent regulatory provision, 5 C.F.R. § 870.802. We address this argument as necessary throughout this section.

the presence of the two witnesses");[9] <u>Bonner</u>, 621 F.3d at 537 (affirming validity of a signed and witnessed designation form that listed the employee's fiancée as his wife and the date as "March," and left numerous checkboxes blank).  Conversely, when designation forms lack a signature and/or witnesses, courts hold that those forms are not valid.  <u>See, e.g.</u>, <u>Hightower</u>, 157 F.3d at 529 (affirming district court ruling that unsigned designation form was not valid); <u>Thomas</u> v. <u>Metro. Life Ins.</u>, 111 F.3d 963 (D.C. Cir. 1997) (unpublished table decision) (per curiam) (same); <u>Ward</u> v. <u>Stratton</u>, 988 F.2d 65, 67 (8th Cir. 1993) (holding that an unwitnessed letter "was ineffective to change the beneficiary designation" in the insured's FEGLI policy).[10]

---

[9] Ms. Donahue argues that <u>Terry</u> is "actually in support of" her case, in part because the designation form's "deficiencies were distinguishable."  The differences between the <u>Terry</u> designation form and Mr. Hebert's designation form are neither here nor there.  The relevant question is whether the forms were signed and witnessed, as required by § 8705.  Both were.

She also notes that the decedent's employer in <u>Terry</u> acknowledged receipt of the designation form, despite its deficiencies.  To the extent she is arguing that HRSSC's rejection of Mr. Hebert's designation form invalidated it, we address this argument below.

[10] Again, Ms. Donahue argues that <u>Ward</u> provides support for her position: "[I]n <u>Ward</u>, the OPM rejected the form because [it] was incomplete."  Not only is this argument factually inaccurate -- the writing in <u>Ward</u> was a letter, not a standard form -- it misses the point again.  The letter in <u>Ward</u> was "incomplete" because it was not <u>witnessed</u>.

A case from the Sixth Circuit illustrates this point clearly. In Bonner v. Metropolitan Life Insurance Co., 621 F.3d 530 (6th Cir. 2010), the insured filled out two beneficiary designation forms. The first form listed his fiancée as his wife, left numerous checkboxes blank, and listed the date as just "March." Bonner, 621 F.3d at 531, 537. After the insured married a different woman, he filled out a second form which named his wife as his beneficiary. Id. But he did not sign the second form. Id. The Sixth Circuit held that the policy was payable to the former fiancée named in the first form, which was signed and witnessed, because the second form was not signed. Id. at 537. As the court noted, although the first form "contain[ed] irregularities," they did not "affect a statutory requirement." Id.[11]

Ms. Donahue also points to regulatory language to argue that a designation form must be complete to be valid. Under the Code of Federal Regulations, "[a] designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by [two] people. The completed designation of beneficiary form may be submitted to the appropriate office via appropriate

_____

[11] As with Terry and Ward, Ms. Donahue maintains that Bonner supports her position. In her view, "Bonner makes clear that when a standard form is used . . . the required information is indicated thereon, and therefore, is required to be fully completed." It is unclear from where she derives this conclusion, but suffice to say, we disagree with her assessment of Bonner.

- 20 -

methods approved by the employing office." 5 C.F.R. § 870.802(b) (emphasis added). If we read this language as Ms. Donahue invites us to, it would invalidate designations that would otherwise be valid under FEGLIA. We decline her invitation.

"Determining a regulation's meaning requires application of the same principles that imbue exercises in statutory construction." Jette v. United of Omaha Life Ins., 18 F.4th 18, 26 (1st Cir. 2021) (quoting Morales v. Sociedad Española de Auxilio Mutuo & Beneficencia, 524 F.3d 54, 57 (1st Cir. 2008)). We "start[] with the plain language of the regulation," id., and we keep in mind "a fundamental canon of [regulatory] construction: that the words of a [regulation] must be read in their context and with a view to their place in the overall [regulatory] scheme," United States v. Miller, 604 U.S. 518, 533 (2025) (citation modified). Applying these principles to § 870.802(b), we read "completed designation of beneficiary form" as referring to the prior sentence, which simply reiterates the statutory requirements. In other words, a designation form is "completed" pursuant to § 870.802(b) when it is in writing, signed, and witnessed by two people.

Thus, under 5 U.S.C. § 8705 and 5 C.F.R. § 870.802, Mr. Hebert was not required to provide the omitted information in Section C "as a condition of making a valid designation." Terry, 354 F.3d at 532. Put another way, although the omitted information

- 21 -

might have made it more convenient for HRSSC to process Mr. Hebert's designation form, none of the blanks and unchecked boxes "affect[ed] a statutory requirement. The [designation form] was 'signed' and in a 'witnessed writing.' It is therefore effective." Bonner, 621 F.3d at 537 (citation omitted) (quoting 5 U.S.C. § 8705).

Nevertheless, Ms. Donahue still has one more argument to discharge. She asserts that Mr. Hebert's designation form "was not properly submitted," and so was "unprocessed" and rejected by HRSSC. She points to regulatory language that designation forms "may be submitted to the appropriate office via appropriate methods approved by the employing office," and that designations not "filed as required by this section ha[ve] no legal effect with respect to benefits." 5 C.F.R. § 870.802(b)-(c). She also points to an affidavit submitted by a HRSSC supervisor, which explains that HRSSC verifies, among other things, that designation forms are complete. According to the affidavit, "[r]ecords show that HRSSC received an invalid [designation form] on 1/27/17. HRSSC determined the form was invalid because Section C was not complete. HRSSC records do not contain a valid designation of beneficiary form for life insurance . . . prior to Mr. Hebert's date of death."

As before, we look to FEGLIA for guidance. The statute provides that a designation must be "received before death in the

employing office," and it is silent as to any further requirements after a form is received. 5 U.S.C. § 8705(a) (emphasis added). We note, however, that the Fifth Circuit recently concluded that if a form is "received," then "[w]hat happens after the form is received and out of the [insured's] control 'cannot vitiate the validly expressed intent of the insured.'" Metro. Life Ins. v. Vasquez, No. 24-11024, 2025 WL 2795055, at *3 (5th Cir. Oct. 1, 2025) (per curiam) (quoting Coomer v. United States, 471 F.2d 1, 5 (5th Cir. 1973)). Though the Fifth Circuit was referring to a form that was lost by the employer's Human Resources office, its holding is nonetheless instructive.

In this case, it is undisputed that Mr. Hebert submitted his form to "the appropriate office via appropriate methods approved by the employing office" -- specifically, HRSSC and overnight mail. 5 C.F.R. § 870.802(b). It is further undisputed that HRSSC "received" Mr. Hebert's designation form, as acknowledged in its letter dated January 31, 2017. That HRSSC returned the form as unprocessed has no import under § 8705. FEGLIA requires that the designation form be "received" before the insured's death. 5 U.S.C. § 8705(a). Here, it was. And, as discussed above, Mr. Hebert's designation form was signed and witnessed. Therefore, it was valid.[12] And because we conclude

---

[12] We note that Ms. Donahue has two additional arguments. First, she argues that holding as we do "sets a dangerous

- 23 -

that the designation form Mr. Hebert executed in January 2017 was valid, we need not reach Ms. Donahue's arguments regarding the validity of the resubmitted form.

## 2. Mr. Hebert's Mental Capacity

We turn now to the third issue raised by Ms. Donahue on appeal: whether Mr. Hebert had the mental capacity to designate beneficiaries on January 26, 2017, which she argues "is material to the case." In support thereof, Ms. Donahue points to dueling witness testimony regarding Mr. Hebert's mental state. She also speculates about why Mr. Hebert would make the Heberts -- particularly, his ex-wife -- his beneficiaries, instead of Mrs. Donahue-Hebert.

For purposes of this case, we assume that "a designation of beneficiary can be set aside upon a finding that the insured was not mentally competent . . . at the time the document was executed." Metro. Life Ins. v. Bradway, No. 10 Civ. 0254(JCF), 2011 WL 723579, at *4 (S.D.N.Y. Feb. 24, 2011); see also Metro.

---

precedent" and requires us "to speculate regarding a decedent's intent." Second, she "asserts that the integrity and determination of the HRSSC ought to be supported by this Court because the determination affects public policy." We treat these arguments as waived: "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Finally, we do not address Ms. Donahue's remaining case citations to non-binding district court decisions from outside of our Circuit. See Johnson v. Metro. Life Ins., 732 F. Supp. 3d 829 (N.D. Ill. 2024); Graber v. Metro. Life Ins., 855 F. Supp. 2d 673 (N.D. Ohio 2012).

- 24 -

Life Ins. v. Beard, Civil Action No. 16-11782-PBS, 2019 WL 480513, at *4 (D. Mass. Feb. 7, 2019) (noting an insurance beneficiary has "defenses recognized under federal law"). We further assume, as asserted by Ms. Donahue, that Massachusetts law applies. See Beard, 2019 WL 480513, at *5 (applying state law to a FEGLIA capacity challenge in the absence of federal common law).

> Under Massachusetts law:
>
> Contractual incapacity exists where a party is either "incapable of understanding and deciding upon the terms of the contract," or where, "by reason of mental illness or defect, the person is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition."

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden, 11 F.4th 12, 22 (1st Cir. 2021) (quoting Sparrow v. Demonico, 960 N.E.2d 296, 301, 302 (Mass. 2012)) (citation modified). Medical evidence is required to show contractual incapacity, and the relevant "inquiry . . . focuses on a party's understanding or conduct only at the time of the disputed transaction." Id. (quoting Sparrow, 960 N.E.2d at 303). Finally, the "burden is on the party seeking to void the contract to establish that the person was incapacitated at the time of the transaction." Id. at 23 (quoting Sparrow, 960 N.E.2d at 301).

Our decision regarding Ms. Donahue's discovery requests, supra Section II.A., determines the outcome here. Ms. Donahue had

the burden of showing that Mr. Hebert was mentally incapacitated on January 26, 2017, when he executed the designation form leaving his life insurance benefits to the Heberts.  She failed to present any medical evidence regarding his capacity, or lack thereof, on that date (or any date).  Because medical evidence is required to show incapacity, she did not carry her burden of proof under either Massachusetts law or the federal summary judgment standard.  See Dusel, 52 F.4th at 503 ("The nonmoving party . . . must, with respect to each issue on which it would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in its favor."  (citation modified)).  Therefore, like the district court, we conclude that Ms. Donahue failed to demonstrate Mr. Hebert lacked the capacity to designate beneficiaries on January 26, 2017.

### III.

For the foregoing reasons, we **affirm** the judgment for the Heberts.